UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

DEC 20 2016

PER _____
DEPUTY CLERK

RICHARD BROWN, et al.,

    Plaintiffs,

v.                          CIVIL NO. 3:12-CV-446

KEVIN SMITH, et al.,          (Judge Kosik)

    Defendants.

## MEMORANDUM

Before the court are the supplemented cross motions for summary judgment filed by Defendants Smith and Treece (Doc. 60) and Plaintiff Richard Brown (Doc. 67).[1] The matter proceeds on a third amended complaint (Doc. 43), and the pending motions deal exclusively with the issue of exhaustion.

---

[1] The original complaint was filed by Plaintiff Brown and another inmate, Arthur Johnson. (Doc. 1.) Following the adoption by the court of a Report and Recommendation from the Magistrate Judge allowing Plaintiffs to file a second amended complaint, a second amended complaint was filed, but only by Plaintiff Richard Brown. (Doc. 29.) Mail thereafter sent to Plaintiff Johnson was returned to the court as "Undeliverable" and every document filed since the issuance of the Report and Recommendation was only filed by Plaintiff Brown. On August 28, 2013, a Memorandum and Order was issued adopting in part a Report and Recommendation issued by the Magistrate Judge dismissing Plaintiff Brown's second amended complaint, allowing the filing of a third amended complaint, and denying Defendants' motion to dismiss. (Doc. 42.) In this order, Plaintiff Johnson was also dismissed. As such, the matter proceeds with only one Plaintiff, Richard Brown.

## I. Background

Plaintiff Richard Brown is an inmate currently housed at the State Correctional Institution at Smithfield ("SCI-Smithfield"), Huntingdon, Pennsylvania. The Defendants, Kevin Smith and C.R. Treece, are correctional officers at SCI-Smithfield, where the incidents occurred. According to Plaintiff, a grievance procedure exists, and he has exhausted his claims "to the greatest extent possible." (Doc. 43 at 2.) The matter proceeds on a third amended complaint wherein Plaintiff alleges the following.

While housed on I block, Plaintiff was subjected to a random cell search on September 6, 2011. The search was conducted by Defendants. Many items were confiscated during the search, and Plaintiff claims that Defendants went through and read his legal paperwork, despite his protests. Plaintiff claims that during the relevant time, he was preparing a Post-Conviction petition challenging his trial counsel's ineffectiveness, and that Defendants' actions hindered his ability to do so. According to Plaintiff, Defendants confiscated the trial transcripts he needed to cite to the record and affidavits that were prepared by he and other defense witnesses, because testimony on the first day of trial was not transcribed.

Plaintiff was convicted of murder, robbery, kidnaping and carrying a firearm without a license. He was given a life sentence on July 21, 2005. He claims that he was unable to properly challenge his conviction in that his Post Conviction Relief Act

("PCRA") Petition was lacking in proper argument and proof because he was unable to cite to the transcript and to the affidavits.

Attached to the third amended complaint as exhibits are letters from Plaintiff's counsel, Mark Greenberg, as well as a letter from the office of Teri B. Himebaugh. According to Plaintiff, Greenberg was assisting him with the preparation of his PCRA Memorandum of Law. Plaintiff states that he was unable to assist Greenberg because he did not have any pertinent legal documents that were needed (affidavits and transcripts) in that Defendants had confiscated them all. (Id. at 3.) Plaintiff states that the exhibits prove his claims. (Id. at 5.)

According to Plaintiff, the affidavits that were taken by Defendants were from a key witness never interviewed by defense counsel, and established that Plaintiff was subjected to the ineffective assistance of counsel. No transcription occurred on the first day so these affidavits were crucial proof for his claims in the PCRA appeal. (Id. at 4, 5.) Defendants' actions were not pursuant to any security reason or Department of Corrections ("DOC") rule. As such, Plaintiff claims that Defendants clearly violated his constitutional rights as the papers were even marked as legal papers. (Id.)

According to Plaintiff, his claim about the transcripts was denied by the trial court. Because of Defendants' actions, Plaintiff states that he had to write in the

PCRA and supporting Memo, what had happened during the first day of trial from memory and was unable to reconstruct it due to the passing of years.

According to Plaintiff, he has demonstrated actual injury due to Defendants' actions of willful confiscation and Plaintiff's inability to contact the witnesses. The PCRA court denied his claim with respect to the first day of his trial not being transcribed, because he had no evidence to support his claim. According to Plaintiff, he lost this PCRA claim because of Defendants' actions.[2] (Id. at 5, 6). Plaintiff seeks compensatory, punitive, and declaratory relief. He also seeks a jury trial and any other relief deemed necessary by the court. (Id. at 7.)

Thereafter, Defendants filed a motion to dismiss the third amended complaint. (Doc. 44.) A Report & Recommendation was issued on June 5, 2014, wherein it was recommended by a Magistrate Judge that the motion to dismiss be granted. (Doc. 48.) Following objections by Plaintiff, the court issued a Memorandum and Order on August 7, 2014, denying Defendants' motion to dismiss, and adopting the Report & Recommendation only in part. (Docs. 50, 51.) In the motion to dismiss, Defendants raised two arguments (1) the failure to exhaust, and (2) the failure to state a claim. As to exhaustion, the Magistrate Judge found that Defendants' motion to dismiss should

---

[2] As per the Memorandum and Order issued on August 7, 2014, Plaintiff's PCRA petition was still pending on all other claims raised. (Doc. 50 at n. 3).

4

be denied since the court already considered and rejected Defendants' arguments as to exhaustion in the Memorandum and Order of August 28, 2013 (Doc. 42). No objections were filed by Defendants to the finding of the Magistrate Judge. (Doc. 50 at 2.) As to the failure to state an access-to-the-courts claim (Defendants' second claim in the motion to dismiss), the Magistrate Judge recommended that Defendants' motion should be granted, finding that Plaintiff failed to sufficiently flesh out an "actual injury" with well-pleaded factual allegations. (Id. at 3.)

In considering Plaintiff's objections to the Report & Recommendation of the Magistrate Judge, this court analyzed what needed to be shown to state an access to the courts claim. The court agreed with the Magistrate Judge's findings as to exhaustion of administrative remedies, but declined to adopt the recommendation as to the failure to state a claim of denial of access to the courts. (Id. at 4-5.) The court did find that the record demonstrated that no notes were transcribed on June 27, 2005, the first day of Plaintiff's trial. (Id. at n. 4.)

Treating Plaintiff's factual allegations as true, this court declined to adopt the Magistrate Judge's finding that Plaintiff had failed to sufficiently plead an actual injury in his Third Amended Complaint. He alleged that his PCRA claim, as to the first day of trial not being transcribed, was denied because he was not able to present cognizable arguments in his pro se Memorandum of Law filed with his PCRA


be denied since the court already considered and rejected Defendants' arguments as to exhaustion in the Memorandum and Order of August 28, 2013 (Doc. 42). No objections were filed by Defendants to the finding of the Magistrate Judge. (Doc. 50 at 2.) As to the failure to state an access-to-the-courts claim (Defendants' second claim in the motion to dismiss), the Magistrate Judge recommended that Defendants' motion should be granted, finding that Plaintiff failed to sufficiently flesh out an "actual injury" with well-pleaded factual allegations. (Id. at 3.)

In considering Plaintiff's objections to the Report & Recommendation of the Magistrate Judge, this court analyzed what needed to be shown to state an access to the courts claim. The court agreed with the Magistrate Judge's findings as to exhaustion of administrative remedies, but declined to adopt the recommendation as to the failure to state a claim of denial of access to the courts. (Id. at 4-5.) The court did find that the record demonstrated that no notes were transcribed on June 27, 2005, the first day of Plaintiff's trial. (Id. at n. 4.)

Treating Plaintiff's factual allegations as true, this court declined to adopt the Magistrate Judge's finding that Plaintiff had failed to sufficiently plead an actual injury in his Third Amended Complaint. He alleged that his PCRA claim, as to the first day of trial not being transcribed, was denied because he was not able to present cognizable arguments in his pro se Memorandum of Law filed with his PCRA

petition. In addition, after he was appointed with counsel for representation of his PCRA petition, he was unable to assist counsel as evidenced by the letter from Attorney Mark Greenberg, who requested that Plaintiff send affidavits stating what happened the first day of trial for his review. Plaintiff further alleged that the confiscated material included affidavits from key witnesses who were never interviewed by Plaintiff's defense counsel at the time of trial and who supported Plaintiff's alibi defense. Plaintiff alleged that he needed the affidavits to show that he had material evidence to support his claim for ineffective assistance of counsel.

We noted the case of Zilich v. Lucht, 981 F.2d 694 (3d Cir. 1992) in both our order of August 7, 2014, and in our order of August 28, 2013. The parties were also directed to compare Zilch with Heller v. Keenhold, 2006 WL 759647 at *5 (M.D. Pa. Mar. 24, 2006), which found Zilich distinguishable because the documents withheld in Heller were of public record and had already been turned over to the plaintiff's public defender. We found the Zilich case to be instructive and, in turn, found that Plaintiff had met the pleading standard to avoid Defendants' motion to dismiss. However, Plaintiff was advised that he must still present evidence at the summary judgment stage, "such that a reasonable jury could return a verdict for [him]" Zilich, 981 F.2d at 698 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)), or prevail at trial. (Doc. 50 at 6.)

On August 12, 2014, an amended case management order was issued stating that all discovery was to be completed by January 12, 2015, any discovery-related motions were to be filed by January 26, 2015, and any dispositive motions were to be filed by March 12, 2015, including supporting briefs. The deadline to consent to proceed before a Magistrate Judge was also March 12, 2015. (Doc. 52.)

On February 2, 2015, a motion to compel discovery was filed by Plaintiff. Thereafter, on March 12, 2105, Defendants filed a motion for summary judgment along with a brief, a statement of material facts, and supporting exhibits. Plaintiff opposed this motion by brief on March 25, 2015. (Doc. 64.)

On April 10, 2015, a Memorandum and Order was issued by the court staying any decision on Plaintiff's motion to compel discovery pending resolution of Defendants' motion for summary judgment on the basis of failure to exhaust administrative remedies. (Docs. 65, 66.) Plaintiff was afforded 21 days to supplement his brief in opposition to Defendants' summary judgment motion to address the failure to exhaust argument. (Id.)

On April 27, 2015, Plaintiff filed a cross motion for summary judgment with a supporting brief and statement of material facts, as well as a response to the statement of facts submitted by Defendants (Docs. 67-70.) On December 18, 2015, a motion filed by Defendants to supplement their motion for summary judgment with an

exhibit was granted by the court. (Doc. 75.) In light of the new exhibit, Plaintiff's final administrative appeal, the parties were ordered to file supplemental briefs addressing their positions on the exhaustion issue by January 8, 2016. (Id.)

On January 4, 2016, Plaintiff filed his supplement in accordance with the court's order. (Doc. 76). A supplement was filed by Defendants on January 5, 2016. (Doc. 77.) The cross motions for summary judgment are ripe for consideration by the court.

## II. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact.

---

[3] Although Rule 56 was revised by amendment effective December 1, 2010, "[t]he standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Id.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010)(quoting Anderson, 477 U.S. at 255). There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the nonmoving party. Id. at 248.

### III. Statement of Undisputed Facts

With the above standard in mind, the following are undisputed facts material to the pending cross motions for summary judgment. Plaintiff was incarcerated at SCI-

Smithfield when the incidents alleged in the Third Amended Complaint occurred. (Doc. 61, Ds' SMF ¶ 2; Doc. 70, Pl.'s Resp. to SMF ¶ 2.) Plaintiff contends that Defendants confiscated certain legal property in a random cell search that occurred on September 6, 2011 that prohibited him from filing a successful PCRA petition relative to his conviction for murder. (Id. at ¶ 3; Doc. 71, Pl.'s SMF ¶ 2.) DC-ADM 804 provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which to resolve issues relating to an inmate's incarceration. These Directives are available at http://www.cor.state.pa.us, and are attached by Defendants to their Statement of Undisputed Facts, along with the Verification of Melissa Roberts. (Id. at ¶ 4, Exs. A, B; Doc. 70 at ¶ 4.) DC-ADM 804 provides that an inmate first files a grievance with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred. If the inmate is unsatisfied with the initial review of his or her grievance, he or she may file an appeal of the decision with the Facility Manager (Superintendent). Upon receiving a decision from the Superintendent, the inmate may appeal that decision to Final Review to the Secretary's Office of Inmate Grievance Appeals ("SOIGA"). (Id. at ¶ 5; Doc. 70 at ¶ 5.) Plaintiff admits that he was provided with notice of the Grievance Policy and the requirements he must meet in grieving his issues through the Grievance Policy. (Doc. 70 at ¶ 6.)

10

The following is also admitted by Plaintiff. In addition to the procedural process and content requirements a grievance and any subsequent appeals must follow, the Grievance Policy also enumerates several timeliness requirements to which an inmate must adhere. For example, an inmate must submit a grievance for Initial Review to the Facility Grievance Coordinator within 15 working days after the event being complained about occurs. See Section 1(A)(13). Following the issuance of the initial review response, an inmate may appeal to the Facility Manager in writing within 15 working days from the date of the Initial Review Response. See Section 2(A)(1). After the inmate receives the disposition of his appeal from the Facility Manager, he may submit an Inmate Appeal to Final Review within 15 working days from the date of the Facility Manager's decision. See Section 2(B)(1). (Doc. 70 at ¶¶ 8-10.) The final appeal is submitted to the SOIGA. (Id. at ¶ 11.)

There is no dispute between the parties that with respect to the allegations set forth in the third amended complaint by Plaintiff, that he filed Grievance #380550 on September 7, 2011. This grievance is attached by Defendants. (Doc. 61 at ¶ 12; Doc. 63, Ex. C; Ex. D, Varner Decl.; Doc. 69 at ¶ 4; Doc. 70 at ¶ 12.) Plaintiff received an initial review response to this grievance on September 20, 2011, and appealed the initial review response to the Facility Manager, and received a response to that appeal on October 12, 2011. (Docs. 61 and 70 at ¶¶ 13, 14; Doc. 69 at ¶¶ 5, 6.)

It is at this point that the parties disagree. Plaintiff states that he completed the grievance process "to the greatest extent possible which means filed to Camp hill (sic))." (Doc. 69 at ¶ 3.) He states that he filed an appeal from the Facility Manager's response to the SOIGA within the 15 working days from the date of the Facility Manager's decision and that it was on time. (Id. at 7; Doc. 70 at ¶ 15.) Defendants disagree with this and claim that although Plaintiff attempted to appeal the Facility Manager's response to the SOIGA, he failed to properly and timely file his final appeal relative to this grievance action. As such, he failed to adequately exhaust his administrative remedies. (Doc. 61 at ¶¶ 15, 17.) The parties both agree that the Final Appeal Decision was dated November 29, 2011, and indicated that the final appeal was dismissed as untimely. (Doc. 61 at ¶ 16; Doc. 70 at ¶ 16.) It also states on the appeal response that Plaintiff had failed to provide the SOIGA with the required documentation for proper review, and this was listed as another reason for the dismissal of the appeal. (Doc. 70 at ¶ 16; Doc. 63-3 at 1.) The Final Appeal Decision lists timeliness and failure to provide documentation as the reasons for the dismissal of the appeal. (Doc. 63-3 at 1.)

A copy of Plaintiff's appeal to the final level, the SOIGA, has been submitted. (Doc. 73-2.) This document contains a stamped date indicating that the appeal was stamped received by the SOIGA on November 14, 2011. The document

also contains a handwritten date of "10-21-11". While Plaintiff claims that his appeal was "timely mailed" within the 15 days of the Facility Manager's decision (Doc. 76 at 1), Defendants state that the appeal was not stamped received until November 14, 2011, well outside the allowable time frame (15 working days from October 12, 2011), when Facility Manager issued his decision on the second level appeal. (Doc. 77-4, Moore Decl. ¶ 18; Doc. 73, Ex. A.) Plaintiff claims, however, that the handwritten date on the third-level appeal (10-21-11) reveals that the appeal was mailed timely. (Doc. 76.) Plaintiff never states who placed the handwritten date at the top of the appeal. Defendants state that no one in the SOIGA placed the handwritten date of 10-21-11 on the appeal, and that it is their belief that it was possibly placed there by Plaintiff. (Doc. 77-4 at ¶¶ 22, 23.) Neither party disputes the existence of two dates on the third-level appeal, the SOIGA's stamped date of November 14, 2011, and the handwritten date of "10-21-11."

## IV. Discussion

In the pending cross motions for summary judgment, the issue before the court is whether Plaintiff exhausted his administrative remedies. It all comes down to whether the grievance appeal was properly submitted to the third level. Plaintiff argues that (1) he timely submitted his appeal and appears to rely on the mailbox rule as announced in Houston v. Lack, 487 U.S. 266 (1988), and (2) that exhaustion

under DC-ADM 804 was not mandatory at the relevant time. In supplementing their own pending motion for summary judgment and responding to Plaintiff's motion, Defendants maintain that Plaintiff has failed to properly exhaust his claims. They argue that not only has Plaintiff timely failed to appeal to the final level, but also that he has not properly exhausted, in that the appeal was also dismissed because Plaintiff did not submit the proper documentation with his appeal.

The requirement of exhaustion by an inmate is well established. The relevant law was previously set forth by the court in the Memorandum and Order issued on August 28, 2013. (Doc. 42.) In this decision, the court rejected Defendants' motion to dismiss on the basis of exhaustion. However, we are now addressing the issue in the context of a summary judgment motion. Defendants maintain that Plaintiff has failed to exhaust the claim that serves as the basis for this action. In Defendants' original motion for summary judgment, as well as Plaintiff's motion for summary judgment, the exhaustion issue is squarely focused on the issue of whether Plaintiff timely submitted his appeal to the third level. There is no question that two dates appear on the appeal. However, in support of their motion, Defendants submit declarations that state that the SOIGA stamps the appeal when it is received and that, to the best of their knowledge, no one in the SOIGA placed the handwritten date on the top of Plaintiff's appeal.

In moving for summary judgment and opposing Defendants' motion, Plaintiff cites to the handwritten date in an effort to establish an issue of fact as to the timeliness of his appeal. He never states that he or someone else placed the date on the appeal, or submits any evidence in support of who did so and when, but argues that this date at least creates an issue of fact as to when the appeal was received. Plaintiff also appears to rely on the prison mail box rule in arguing that his appeal was timely mailed. However, he offers no evidence as to when he actually mailed the appeal. In the alternative, Plaintiff appears to claim that under DC-ADM 804, in effect at the relevant time, he was not required to submit an appeal to the SOIGA within 15 days. The court rejects this argument as Plaintiff does not dispute that exhaustion to the three levels is mandatory, and the regulation in effect at the relevant time speaks of the appeal to Final Review being "within 15 working days from the date of the Facility Manager/designee's decision." (Doc. 63-1 at 14.)

Regardless, the court finds that even if the exhibit submitted by Defendants demonstrates an issue of fact with respect to the timeliness of the final appeal due to the two dates that appear - the time-stamped date and the handwritten date, the document from the SOIGA responding to said appeal itself demonstrates that the appeal was dismissed on two separate basis - timeliness and also because Plaintiff failed to submit the proper supporting documents. (Doc. 63-3 at 1, Final Appeal

Decision.) While not raised in their original summary judgment motion, both timeliness and the lack of proper documentation are both argued by Defendants in their supplemented brief. (Doc. 77.) The lack of proper documentation is both argued by Defendants as an alternative basis for the rejection of the appeal and is supported by the record. Plaintiff offers nothing to controvert the undisputed fact that he failed to submit the proper documentation to the SOIGA and that this was an additional basis for the rejection of his appeal. Even though Defendants focus on the timeliness of the appeal in their original motion, they still state in their original statement of facts that Plaintiff failed to timely and properly file his final appeal. (Doc. 61 at ¶ 17.) As such, it is clear that Plaintiff failed to properly exhaust his claims even if the court were to assume he filed the appeal timely or find an issue of fact with regard to such. He offers no argument in response to the fact that the appeal was also dismissed because he failed to submit the proper paperwork with the appeal. In fact, Plaintiff's entire supplement focuses on the timeliness of the appeal and the prison mailbox rule. However, the fact that Plaintiff also failed to submit the proper documentation, and that the appeal was also rejected on said basis, is a fact established by the exhibit submitted by Defendants. Although the parties were directed to file supplemental briefs addressing their positions on the outstanding requests for the entry of summary judgment in the matter on the basis of exhaustion

16

in light of the exhibit filed by Defendants (the final administrative appeal submitted by Plaintiff) (Doc. 75), Plaintiff never addressed Defendants' argument that even if the court were to find that the appeal was timely submitted, that it was still dismissed at the third level as improper in that Plaintiff failed to submit the proper documentation with the appeal (Doc. 73-2). As such, summary judgment will be granted in favor of Defendants and against Plaintiff in this matter. There is no need to rule on the motion to compel filed by Plaintiff earlier in this case. Although the stay on the motion will be lifted, the motion is now moot in light of the court's ruling on the summary judgment motions. An appropriate order follows.